IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TANNERITE SPORTS, LLC<br><br>**Plaintiff,**<br><br>v.<br><br>NBCUNIVERSAL NEWS GROUP,<br>A DIVISION OF NBCUNIVERSAL<br>MEDIA, LLC<br><br>and<br><br>WLEX COMMUNICATIONS,<br>LLC<br>**Defendants.** | No. _____<br><br>**Jury Trial Demanded**<br><br><br>Assigned to:<br><br>_____ |

## COMPLAINT

COMES NOW Plaintiff Tannerite Sports, LLC, ("Tannerite") and as its Complaint in this action against NBCUniversal News Group, a division of NBCUniversal Media, LLC ("NBCU"), and its indirect affiliate or subsidiary, WLEX Communications, LLC, ("WLEX") (collectively, "Defendants") shows the Court the following, and requests a trial by jury on all counts set forth herein. All facts herein are alleged on information and belief except those facts concerning Tannerite's own activities.

### Jurisdiction and Venue

1. This is a civil action seeking damages and injunctive relief for libel and slander under the law of the State of New York.

2. This Court has original jurisdiction under 28 U.S.C. § 1332.

3. This action is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. The Defendants, by the libel and slander described below, have caused, and/or will cause, a substantial loss of sales by the Plaintiff and may also cause an increase of supply costs. The cost of the loss of sales and suppliers is greater than $75,000.

5. Upon information and belief, Defendant NBCU has its principal place of business within this District, and NBCU's defamatory statements described below were published in New York.

6. Upon information and belief, Defendant WLEX is a direct or indirect affiliate or subsidiary of NBCU and/or has a contractual relationship with NBCU and/or receives and rebroadcasts media content that is provided by NBCU. One or more of WLEX's defamatory statements was derived from NBCU's media content.

7. This Court has personal jurisdiction over the Defendants, and venue in this District is proper under 28 U.S.C. § 1391(b).

**Parties**

8. Plaintiff, Tannerite Sports, LLC, is an Oregon limited liability corporation duly organized by law and having its principal place of business at Pleasant Hill, Lane County, Oregon.

9. Upon information and belief, Defendant NBCUniversal Media, LLC, was at the time this action was commenced, and still is, a limited liability corporation incorporated under the laws of Delaware, with its principal place of business in New York. Its address is 30 Rockefeller Plaza, New York, New York 10112-0015.

10. Upon information and belief, Defendant WLEX was at the time this action was commenced, and still is, a limited liability corporation incorporated under the laws of Kentucky, with its principal place of business in Kentucky. Its address is 1065 Russell Cave Road, Lexington, KY 40505.

## Background

11. Plaintiff Tannerite Sports manufactures, sells, and distributes Tannerite®-brand binary (two-component) exploding rifle targets.

12. Tannerite's rifle targets are intended for use with high-powered, center-fire rifles and were invented and patented by Tannerite's founder, Daniel J. Tanner.

13. When shot with a high-power, center-fire rifle round, Tannerite®-brand rifle targets produce water vapor and an audible boom.

14. Tannerite's products are used as shot indicators for target practice at rifle ranges. A true and correct copy of a Tannerite product guide is attached as Exhibit A.

15. Tannerite®-brand rifle targets are the shot-indicator target of choice for hunters, law enforcement, and U.S. armed services.

16. Tannerite®-brand rifle targets are, and were specifically designed to be, safe and non-flammable, whether the targets are sitting on a shelf, being mixed, or used.

17. Tannerite's rifle targets use high-quality chemical precursors to ensure that the explosion of a Tannerite®-brand product is non-incendiary—i.e., it has no tendency to start a fire.

18. Tannerite®-brand binary exploding rifle targets are commercially available kits consisting of two non-explosive chemical precursors: an oxidizer and a catalyst.

19. Tannerite's nonexplosive rifle-target precursors are stored and transported in separate containers.

20. A customer must thoroughly mix the two precursors inside a plastic container before a Tannerite®-brand rifle target can be used.

21. After the precursors are mixed, a Tannerite®-brand rifle target may then be activated by the bullet from a high-powered rifle.

22. A Tannerite®-brand rifle target will rapidly expand upon impact when a rifle bullet strikes the target at high velocity, e.g., 2,200 feet per second.

23. The precursors in Tannerite's rifle targets are ammonium nitrate and powdered aluminum.

24. Ammonium nitrate is primarily used commercially as a stable, inexpensive, and water-soluble high-nitrogen fertilizer to increase plant growth and increase crop yields. It is a shelf-stable, inflammable oxidizer.

25. Even when ammonium nitrate is mixed with powdered aluminum, the resulting composition cannot easily be activated.

26. Shipping and buying Tannerite's product with the separate precursors, mixing the precursors at the target-practice location, and shooting the filled target at the target practice location are legal and comply with federal regulations.

27. The U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") does not classify the Tannerite's rifle-target precursors as explosives.

28. Even after the precursors for Tannerite®-brand rifle targets are mixed, the rifle targets are safe when they are used in accordance to Tannerite's instructions. True and correct copies of Tannerite's rifle-target instructions are attached as <u>Exhibit B</u>.

29. Tannerite's rifle targets are designed to serve only as rifle targets.

30. Although the U.S. military trains soldiers to shoot rifles using Tannerite's targets as shot indicators, Tannerite's rifle targets have never been used as military weapons.

## COUNT I:  Libel and Slander

31. Plaintiff hereby realleges paragraphs 1–30 of the Complaint as if fully restated herein.

32. On March 23, 2015, Defendant NBCU released a defamatory "report" that falsely claimed that Plaintiff's rifle targets are "Bombs for sale". A true and correct copy of screenshots of NBCU's false report is attached as Exhibit C.

33. In a related video, Defendant NBCU's investigative reporter holding Tannerite products falsely asserted that "Right now I am basically holding a bomb in my hand."

34. On March 24, 2015, Defendant WLEX published an Internet article that falsely asserted that Plaintiff's rifle targets are "ready made bombs [that] are being sold in sporting goods stores . . . ." A true and correct copy of screenshots of WLEX's false article is attached as Exhibit D.

35. WLEX's article states, "There is a federal law prohibiting people from manufacturing [Tannerite] products, but none preventing people from buying as much of it as they can carry." As stated, WLEX's article falsely asserts that the workers of Tannerite Sports, LLC are breaking federal law when manufacturing Tannerite® products.

36. NBCU's report and video, and WLEX's article, contain one or more written false statements that were intended to impugn Plaintiff's rifle targets and Plaintiff's reputation in the sporting industry. A true and exact copy of screenshots of an Internet article describing falsities in the NBCU report is attached as Exhibit E.

37. Bombs are destructive devices that are strictly regulated by the federal and state governments.

38. Plaintiff's rifle targets are not bombs.

39. Federal guidelines allow consumers to purchase Tannerite®-brand rifle targets for personal, non-commercial use, and the consumer is allowed, under federal guidelines, to mix the precursors at the target-practice location and shoot the target.

40. Tannerite®-brand rifle targets can be legally used for sporting activities.

41. The conduct of Defendants, as described above, constitutes libel and slander under the law of the State of New York.

42. The Defendants' false statements are very injurious to Tannerite's reputation. They are therefore libel *per se*.

43. Defendants' false statements were made publicly and were intended to be made public.

44. Defendants had no evidence supporting the truth or veracity of their defamatory statements.

45. In fact, Defendants' false statements were made maliciously, intentionally, and with reckless disregard for the truth or veracity of the statements.

46. The Defendants published their defamatory statements with malice.

47. The Defendants knew or should have known that Defendants' false statements would harm Plaintiff.

48. The false statements made by the Defendants have, in fact, directly and proximately harmed Plaintiff. The Plaintiff has suffered, and continues to suffer, economic loss and harm to its reputation because of the Defendants' false statements.

49.     The conduct of the Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause the Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. The Plaintiff has no adequate remedy at law. The Plaintiff is entitled to injunctive relief prohibiting the Defendants from engaging in further defamation. This injunctive relief is not adverse to public interest.

50.     Plaintiff requests a trial by jury in this action.

**WHEREFORE**, Plaintiff demands:

A.      That Defendants, their officers, agents, servants, employees, attorneys, parents, affiliates, related companies, and all persons acting for, with, by, through or under them, and each of them, be permanently enjoined and restrained from further libel or slander;

B.      That Defendants be required to account for and pay over to Plaintiff all of Plaintiff's past and future damages, the exact amount of which cannot be calculated at this time, but is believed to be in the millions of dollars;

C.      For Defendants to pay Plaintiff punitive damages as may be permitted by law or in the discretion of the Court;

D.      For Defendants to pay Plaintiff its attorney's fees and costs expended herein; and

E.      For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

TANNERITE SPORTS, LLC

Dated: March 27, 2015             By: *David Cargille*

MENDELSOHN, DRUCKER, & DUNLEAVY, P.C.
David L. Cargille, Esquire (ID No. 3966207)
Kevin M. Drucker, Esquire (*pro hac vice*)
1500 John F. Kennedy Blvd., Suite 312
Philadelphia, PA 19102
Telephone: (215) 557-6656
Fax: (215) 557-8477